UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JAMES VOLIVA,                                         Civil No. 11-CV-01554

    Plaintiff,

v.

CURTISS-WRIGHT CORPORATION, et al.

    Defendants.

## DEFENDANT UNITED TECHNOLOGIES CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### I. INTRODUCTION

Plaintiff James Voliva filed this asbestos injury action in the Connecticut Superior Court, Judicial District of Fairfield at Bridgeport, against United Technologies Corporation ("UTC") and numerous other defendants. Plaintiff alleges he developed an asbestos-related disease as a result of exposure to asbestos from Pratt & Whitney[1] aircraft engines while working as an aircraft mechanic at Norfolk Naval Air Station.

On October 11, 2011, UTC removed this case pursuant to 28 U.S.C. § 1442(a)(1) "federal officer removal" for evaluation of its government contractor defense in a federal forum. Plaintiff filed a motion to remand, which UTC opposes herein.

---

[1] Pratt & Whitney is an unincorporated division of UTC.

Plaintiff fails to show that this case was improperly removed. UTC's notice of removal and supporting declarations establish that Pratt & Whitney military aircraft engines supplied to the U.S. Navy were designed and built in accordance with reasonably precise specifications provided by the Navy, and under the direct control and supervision of the Navy. The Navy provided similarly precise specifications governing the content and placement of warnings in the product materials. Plaintiff's claims against UTC based on alleged exposure to asbestos-containing components in Pratt & Whitney military aircraft engines, and the validity of UTC's government contractor defense to plaintiff's design defect and failure to warn allegations, are precisely the type of issues that should be tried in federal court.

To protect federal contractors from state tort liability, and thereby prevent the second-guessing of policy decisions made by the federal government, the Supreme Court has mandated a liberal interpretation of the federal officer removal standards in favor of removal. Under this liberal scheme, UTC is not required to prove its federal defense, or even establish a valid defense. It need only show a colorable federal defense to any of plaintiff's claims. Because UTC has established more than a colorable defense of government contractor immunity to plaintiffs' design defect and failure to warn claims, and has met the requirements for invoking federal officer removal jurisdiction, plaintiff's motion should be denied.

## II. ARGUMENT

### A. Plaintiffs' Motion for Remand Misstates the Law with Respect to the Applicable Standard Governing Federal Officer Removal and the Requirements of *Boyle*

#### 1. Federal officer removal jurisdiction is applied liberally in favor of removal and requires defendants to show only a colorable federal defense

Contrary to plaintiff's assertion, federal officer removal is to be applied liberally. Pursuant to 28 U.S.C. §1442(a), "[f]ederal officers, and their agents, may remove cases based on acts performed under color of their federal office if they assert a colorable federal defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). Unlike the general removal statutes, which are to be strictly construed in favor of remanding to state court, "the Supreme Court has mandated a generous interpretation of the federal officer removal statute . . . ." *Durham*, 445 F.3d at 1252 (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)); *Wright v. A.W. Chesterton Co. Inc.*, 2008 WL 512728 (N.D.Cal. 2008) ("Unlike removal under § 1441(a), the presumption under § 1442 is in favor of removal"). There is "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Durham*, 445 F.3d at 1252.

Accordingly, a defendant need not show a valid or even a likely successful federal defense, but merely a colorable one. "Whether that defense will be successful is

3

an issue for trial, not one that the court should address on a motion for remand." *Contois v. Able Industries Inc.*, 523 F.Supp.2d 155, 161 (D.Conn. 2007). "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

**B. Application of the Correct Legal Standard Establishes That This Court Has Jurisdiction Over Plaintiff's Claims Based on the Federal Officer Removal Statute**

**1. UTC is entitled to removal under Section 1442(a)(1) as long as it identifies facts which, when viewed in the light most favorable to UTC, supports its government contractor defense**

The proper standard applicable to UTC's notice of removal is a low standard that can be met even where there are disputes as to the merits of the defense. *Marley v. Elliot Turbomachinery Co., Inc.*, 545 F.Supp.2d 1266, 1271-73 (S.D.Fla. 2008). "Indeed, no determination of fact is required at the removal stage." *Id.*

> While the court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. ***Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense. . . . It is the sufficiency of the facts stated – not the weight of the proof presented – that matters***. *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 782 (E.D. Penn. 2010) (emphasis added).

4

Lower court decisions granting remand based on the same "insufficiency of the evidence" arguments posed by plaintiff here – i.e., failure to submit evidence that the Navy specifications required the use of asbestos, that the Navy expressly prohibited asbestos warnings by manufacturers, that the defendant attempted to warn about asbestos on products supplied to the Navy, and that the Navy ever rejected a manufacturer's asbestos warning – have been rejected by the Asbestos MDL as improperly applying a heightened standard at the remand stage. *Hagen*, 739 F.Supp.2d at 780-81. "Upon review of the many thoughtful opinions and applying the Supreme Court's clear teaching that a colorable defense need not be proven at this stage of the litigation due to the broad removal right the statute creates, the Court declines to follow those court's that have seemingly required a heightened showing of a colorable federal defense." *Id.* at 781. In fact, the MDL has even doubted whether *any* evidence is necessary to support federal officer removal: "Given that the Supreme Court has referred to the colorable defense element as a 'pleading requirement []' and 'averment,' it is debatable whether a defendant must, at this stage of the proceeding, submit affidavits or other evidentiary materials to make out a colorable federal defense." *Id.* at 778, fn. 8.

Consistent with the clear command from Congress and the Supreme Court that Section 1442(a)(1) be interpreted broadly to ensure a federal forum for government contractors, "a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light

5

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

most favorable to the defendant, would establish a complete defense at trial." "Whether that defense will be successful is an issue for trial, not one that the court should address on a motion for remand." *Contois v. Able Industries Inc.*, 523 F.Supp.2d 155, 161 (D.Conn. 2007). Thus, plaintiff's objections to the declaration of Allan Shiffler on the ground that it does not cite to specific contracts, regulations, or speculations, are irrelevant given the appropriate standard – sufficiency of the pleading – to be applied at the remand stage.

Moreover, plaintiffs' evidentiary objections are routinely rejected on their merits by courts properly finding that a witness' testimony based on personal, first-hand knowledge is sufficient to establish Navy control over the design and manufacture of military equipment. *See Beckwith v. General Electric Co.*, 2010 WL 1287095, *6 (D.Conn. 2010) ("Nor are the defendants required to disclose the exact government specifications or contracts stating specifically that the defendants were not to affix their particular asbestos warnings or communications concerning an actual time when the asbestos warnings were actually rejected by the government"); *Contois v. Able Industries Inc.*, 523 F.Supp.2d 155, 160, 164-165 (D.Conn. 2007) (finding declarations averring to the Navy's control over the design process sufficient to support removal); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F.Supp.2d 51, 57-58 (D.Mass. 2008) (noting that non-testimonial evidence is not required where the affiants have personal knowledge of the military's specifications); *Redman v. A.W. Chesterton Co.*, 2008 WL 4447729 (N.D.Cal. 2008) (finding the declaration of a naval architect/engineer

6

admissible on the subjects of Navy protocols and procedures regarding contracting practices as a result of his education, knowledge, and experience as a naval architect); *Wright v. A.W. Chesterton Co. Inc.*, 2008 WL 512728, *3 (N.D.Cal. 2008) (finding that the witness relied on his independent knowledge of the contents of various specifications and, therefore, he need not submit the documents themselves).

Allan Shiffler's testimony is based on his personal knowledge of Navy contracts and specifications obtained over the course of this 37 years of working at UTC's Pratt & Whitney division and direct involvement in the development and manufacture of military aircraft engines. Mr. Shiffler's declaration contains sufficient foundation for his testimony regarding Navy contracts and specifications based on personal knowledge, and establishes a colorable government contractor defense to plaintiff's design defect and failure to warn claims.

### 2. This Court has federal officer removal jurisdiction over plaintiff's <u>design defect</u> claim

Plaintiff's only asserted ground for disputing federal officer jurisdiction over his design defect claim is that there is no evidence the Navy required UTC to incorporate asbestos-containing components in its aircraft engines. There is no such requirement. A "requirement that a federal officer directly ordered the use of asbestos by a defendant in order to demonstrate a causal nexus is not consistent with the purposes of the federal officer removal statute." *Seigfried v. Allegheny Ludlum Corp.*, 2009 WL 1035001, *10 (W.D.Pa. 2009) (citing *Jefferson County Ala. V. Acker*, 527 U.S. 423, 432); *see also*

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Contois v. Able Industries Inc.*, 523 F.Supp.2d 155, 164-65 (D.Conn. 2007) (declaration of retired Navy admiral that the Navy retained final say over the design of any piece of equipment was sufficient); *Lindenmeyer v. Allied Packing & Supply, Inc.*, 2010 WL 234906 (N.D.Cal. 2010) (expressly rejecting plaintiff's argument that the removing defendant must show that the government required the use of asbestos); *Williams v. Todd Shipyards Corp.*, 1998 WL 526612, *4, *5 (5th Cir. 1998) ("[O]ur decisions indicate that detailed supervision and/or direction by a federal officer or authority is sufficient to satisfy the causal nexus prong"); *Prewitt v. Goulds Pumps* (IPG), 2009 WL 2959877, *5 (W.D.Wash. 2009) ("Certainly one way to show 'reasonably precise specifications' is to prove that the United States required the defect, in this case, asbestos, but it is not the only way").

To establish a government contractor defense, it is only necessary to show that the government approve, rather than create, the specifications at issue. *Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1316-1317 (11th Cir. 1989) Thus, the defense "is met where . . . the contractor incorporated government performance specifications into a design that the government subsequently reviewed and approved," and the design is the product of a cooperative back-and-forth between the government and the contractor. *Id.* at 1320-1321. As long as the government approved reasonably precise specifications, there is no requirement that the specifications contained the exact injury-causing defect. *Carley v. Wheeled Coach*, 991 F.2d 1117, 1125 (3rd Cir.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

1993) ("it is necessary only that the government approve, rather than create, the specifications").

The Navy's approval of reasonably precise specifications is sufficient to establish that the contractor acted under the federal government's command, even without evidence that the specifications required the use of asbestos. *Russek v. Unisys Corp.*, 921 F.Supp. 1277 (D.N.J. 1996), is instructive. In *Russek*, postal workers asserted a design defect claim against the manufacturer of a mail sorting machine, alleging that the machine's defective keyboard design caused repetitive stress injuries to the machine operators. *Id.* at 1281. The manufacturer moved for summary judgment based on government contractor immunity on the ground that the U.S. Postal Service ("USPS") controlled the design of the keyboard. *Id.* at 1283. The manufacturer submitted affidavits establishing that the manufacturer and the USPS worked closely together in constructing the prototype for the machine, that the USPS prepared the drawings for the machines, and that the USPS retained final authority over any design changes in the drawings. *Id.* at 1283.

The postal workers opposed summary judgment on the ground that the specifications did not specifically address the ergonometric design features of the keyboard alleged to be defective. *Id.* The court ruled that where the government approved reasonably precise specifications for the product, the contractor could establish a *Boyle* defense regardless of whether the specifications expressly required or prohibited the particular design feature challenged by the plaintiff. *Id.* at 1288-89.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

"[W]hile the approved specifications did not address the specific ergonometric issues [alleged to be defective], they contained detailed specifications for and drawings for the keyboards and the operator stations. These specifications were certainly 'reasonably precise,' and their failure to specifically negate every possible ergonometric modification to the design does not change that status." *Id.* at 1287-88.

Here, UTC has established that the design, specification, and manufacture of Pratt & Whitney military aircraft engines supplied to the U.S. Navy were approved by the Navy. Declaration of Allan Shiffler, ¶ 8. The military inspectors knew of and approved all materials and parts contained in Pratt & Whitney engines intended for use by the Navy. *Id.* at ¶ 9. With Allan Shiffler's declaration, UTC has made the requisite showing that the alleged injury-causing conduct occurred at the direction of a federal officer. This Court, therefore, has jurisdiction over plaintiff's design defect claim.

    3.    **This Court has federal officer removal jurisdiction over plaintiff's <u>failure to warn</u> claim**

        a.    **Plaintiff incorrectly assumes the existence of a legal duty to warn, which involves legal and factual determinations that should be decided by a federal court**

Plaintiff contends that UTC cannot establish a colorable federal defense to his failure to warn claim because there is no evidence that UTC attempted to warn users about the dangers of asbestos associated with aircraft engine repair or maintenance. Plaintiff incorrectly assumes the existence of such a duty. To the contrary, UTC

10

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

produced evidence that the state-of-the-art scientific knowledge regarding asbestos-related health hazards in the 1950s, 1960s and 1970s, would not have included any information or knowledge that an aircraft engine mechanic performing maintenance, repairs, or overhauls, or anyone present when such work was being performed, would be at risk for any asbestos-related disease from the work performed on aircraft engines. There is no reason to suspect that a manufacturer or designer of aircraft engines that incorporated the typical asbestos-containing components associated with such engines at that time, or now, (i.e., asbestos-containing gaskets) would have considered that such asbestos-containing materials presented any health hazard to employees working on aircraft engines. Declaration of William Ringo in Support of UTC's Removal, ¶ 10. Therefore, there would have been no basis for UTC to attempt to add a warning to its equipment manuals about the potential hazards of asbestos exposure from military aircraft engines.

Plaintiff's argument essentially requires an adjudication of an essential element of his cause of action, legal duty, before this Court can determine whether UTC has a colorable federal defense. UTC contends, however, that it had no duty to warn about the potential hazards of asbestos exposure arising from the repair or maintenance of aircraft engines. The question of whether a duty exists, and whether UTC has a valid federal defense to the alleged failure to meet that duty, is a matter to be decided in a federal forum, and is precisely the purpose of the federal officer removal statutes. The

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

success of UTC's defense is a matter that should be decided by a federal court either at trial or on a motion for summary judgment, not on a motion to remand.

> **b.    Removal of failure to warn claims does not require evidence that the government specifically precluded asbestos-related warnings**

Contrary to plaintiff's assertion that "*Boyle* does not apply to allegations such as the Plaintiffs' failure to warn as the hazards associated with asbestos,"[2] federal courts have "unanimously held that the government contractor defense may preempt [failure to warn] claims." *Getz v. Boeing Co.*, 654 F.3d 852, 866 (9th Cir. 2011); *see also Faddish v. General Electric Co.*, 2010 WL 4146108, *7 (E.D.Pa. 2010) ("[i]t is well established that the government contractor defense is not limited to design defect causes of action, but also applies to failure to warn claims"); *Russek v. Unisys Corp.*, 921 F.Supp. 1277, 1292 (D.N.J. 1996) ("[T]he federal appellate courts that have addressed the issue . . . have all concluded that *Boyle* applies to failure to warn claims"). To establish the government contractor defense in the failure to warn context, a defendant must show that: (1) the government provided warning directives, (2) the defendant complied with those directives, and (3) the defendant either warned the government about the hazards of asbestos, or the government knew about the hazards of asbestos. *Faddish*, 2010 WL 4146108 at *7. A causal nexus exists between a plaintiff's failure to warn claims and a manufacturer's government contractor defense as long as there is evidence that

---

2 Plaintiff's Motion to Remand, P. 7.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

in making the decision whether to provide a warning, the contractor acted in compliance with reasonably precise specifications imposed on it by the government. *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996).

Plaintiff's contention that a defendant must prove the Navy expressly forbade it from warning about the hazards of asbestos in order to remove a failure to warn claim is unsupported by any binding authority. While citing numerous remand orders from other jurisdictions, plaintiff completely ignores the long line of decisions by this Court finding sufficient evidence of a colorable federal defense where the defendant establishes that it would not have been permitted to affix any type of warning on equipment without prior approval by the Navy. *see also Pantalone v. Aurora Pump Co.*, 576 F.Supp.2d 325, 331-32 (D.Conn. 2008); *Beckwith v. General Electric Co.*, 2010 WL 1287095 (D.Conn. 2010); *Kotecki v. Buffalo Pumps, Inc.*, 2009 WL 2253169, *3-4 (D.Conn. 2009); *Murphy v. General Electric Co.*, 2009 WL 2151192 (D.Conn. 2009); *Viscosi v. American Optical Corp.*, 2008 WL 4426884 (D.Conn. 2008).

This Court has rejected the notion that a defendant must prove with affirmative evidence that the Navy expressly prohibited the defendant from affixing asbestos-related warnings to its product. In *Allen v. CBS Corp.*, 2009 WL 4730747, *4 (D.Conn. 2009), the Court stated:

> This dispute goes beyond the issues to be resolved in a motion for remand and into the issues to be resolved at trial. While Westinghouse may need to prove with "affirmative evidence" that the Navy prohibited them from adding

13

>warnings to their products in order to avoid liability, the defendant need not "virtually win his case before he can have it removed." [Citation omitted]. Westinghouse has provided the court with sufficient evidence to satisfy this element of the government contractor defense for the purposes of removal. *Allen*, 2009 WL 4730747 at *4.

Other jurisdictions are in accord. *See Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) (the defense applies as long as there is evidence that in making the decision whether to provide a warning, the contractor acted in compliance with reasonably precise specifications imposed on it by the government; *O'Connell v. Foster Wheeler Energy Corp.*, 544 F.Supp.2d 51, 55 (D.Mass. 2008) ("Although the contractor need not show that the government prohibited it from supplementing the warnings with warnings of its own, it must produce evidence that it was acting within the parameters of reasonably precise specifications imposed by the United States"); *Curry v. American Standard, Inc.*, 2009 WL 308029 (S.D.N.Y. 2009) (evidence that the government specifically precluded warnings is not necessary to establish a colorable federal defense to failure to warn claims); *Nesbiet v. General Electric Co.*, 399 F.Supp.2d 205, 212-13 (S.D.N.Y. 2005) ("Nesbiet suggests that in order to meet the 'causal nexus' requirement GE must provide direct evidence that the Navy 'specifically prohibited it from warning about asbestos.' This is more than GE is required to do"); *Kirks v. General Electric Co.*, 2009 WL 2970391 (D.Del. 2009) (finding removal proper where declarations established that the Navy controlled decisions of what warnings should or should not be included on the equipment); *Marley v. Elliot Turbomachinery*

14

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

*Co., Inc.*, 545 F.Supp.2d 1266, 1274 (S.D.Fla. 2008) ("The plaintiffs suggest that the defendants need to show that the Navy actually prohibited asbestos warnings to establish a 'causal nexus' at the removal state. I disagree").

Here, Allan Shiffler testified that warnings or product manuals that accompanied the aircraft engines built by Pratt & Whitney for the Navy were controlled and approved by the Navy. Declaration of Allan Shiffler, ¶ 11. Pratt & Whitney was prohibited from providing warnings on or with aviation engines it supplied to the Navy without the prior consent and approval of the Navy. *Id.* Similar evidence has been consistently been determined by this Court to be sufficient evidence that the U.S. Navy imposed reasonably precise specifications with respect to warnings, and of a causal nexus between the specifications and plaintiff's failure to warn claims.

### C.  Plaintiff's Argument That Removal is Improper Because His Claims Arise Out of State Law Defies the Very Purpose of the Government Contractor Defense Which is to Shield Government Contractors From State Tort Actions

Plaintiff's argument that this case should be remanded because personal injury tort claims arise out of state law which is best interpreted by state courts is a non sequitur argument that completely misses the purpose behind the federal officer removal statutes and the government contractor defense. In enunciating the government contractor defense in *Boyle*, the Supreme Court recognized that manufacturers supplying equipment to the United States military pursuant to military specifications should be afforded the same protections from state law suits that the

15

government would be afforded if the government had manufactured the equipment itself.

> It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production. In sum, we are of the view that state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced. *Boyle v. United Technologies Corporation*, 487 U.S. 500, 512 (1988).

The government contractor defense is a natural extension of the "discretionary function" exception to the Federal Tort Claims Act. The FTCA authorizes damages suits against the United States for harm caused by the tortious conduct of government employees. 28 U.S.C. § 1346(b)." *Boyle*, 487 U.S. at 511. This waiver of immunity, however, does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (emphasis added). The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Plaintiff's citation to *Parker v. Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580 (5th Cir. 1992), for the proposition that the federal court should not retain jurisdiction over a state law action when the sole federal claim is dismissed, is inapposite. This Court has jurisdiction over plaintiff's claims because UTC has established a colorable government contractor defense and has satisfied the requirements for removal under 28 U.S.C. § 1442(a).

## III.   CONCLUSION

For the foregoing reasons, UTC respectfully requests that plaintiff's motion to remand be denied.

DEFENDANT
UNITED TECHNOLOGIES CORPORATION

By_____
John W. Bradley, Jr. ct05418
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103-3101
jbradley@rms-law.com
860-549-1000
860-724-3921

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

**CERTIFICATION**

I hereby certify that on November 22, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to those listed below who are unable to accept electronic filing, as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
John W. Bradley, Jr. ct05418

5099-120/IJ5866

18

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726